Jonathan O. Hafen (6096)
Daniel Sorenson (18101)
Parr Brown Gee & Loveless, P.C.
101 South, 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
jhafen@parrbrown.com
dsorenson@parrbrown.com

Jenny Gassman-Pines (*Pro Hac Vice pending*)
Greene Espel PLLP
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
(612) 373-0830
jassman-pines@greeneespel.com

*Attorneys for Cargill, Incorporated*

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| Cargill, Incorporated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Matthew Leak,<br><br>　　　　　　Defendant. | **COMPLAINT**<br>**(Jury Demanded)**<br><br>**Case No.**<br><br>Judge:<br>Magistrate Judge: |

Plaintiff Cargill, Incorporated ("Cargill"), by and through its undersigned counsel, hereby brings this Complaint against Defendant Matthew Leak ("Mr. Leak"), and alleges as follows:

## INTRODUCTION

1.      Mr. Leak, who was a trusted and core member of Cargill's Animal Nutrition business, served as a Dairy Nutritionist and sold customized feed and nutrition products to dairy farmers across northern Utah. In that role, he developed significant customer relationships on Cargill's behalf and worked with Cargill's confidential and proprietary information and software.

2.      In exchange for Mr. Leak's employment, salary and benefits, and eligibility for the Cargill Animal Nutrition Dairy Nutritionist Compensation Program, Mr. Leak agreed to be bound by a Non-Solicitation and Non-Compete Agreement (the "Non-Solicit Agreement"). He also signed a separate Employee Confidential Information, Inventions and Original Works of Authorship Agreement (the "Confidentiality Agreement") in which he agreed to protect Cargill's confidential information and to return it upon his separation from Cargill employment. Those agreements were narrowly tailored to protect Cargill's legitimate business interests, including its customer relationships and confidential information.

3.      Despite those restrictions, and in violation of the duty of loyalty Mr. Leak owed to Cargill as a Cargill employee, in or about December 2022, Mr. Leak announced his intention to start his own dairy nutrition business and began soliciting Cargill's customers for his personal business while he was still a Cargill employee. Mr. Leak continued soliciting his former Cargill customers after his resignation. And his solicitations were successful: Mr. Leak converted several customers from Cargill to his own personal business. Mr. Leak also retained possession of Cargill's confidential and proprietary information, which he has not

returned to date and which, on information and belief, he used to solicit Cargill's customers and convert their business.

4.    Mr. Leak's conduct breached his agreements with Cargill and his duty of loyalty to Cargill, causing Cargill damages and causing irreparable harm to Cargill's customer relationships.

**THE PARTIES, JURISDICTION, AND VENUE**

5.    Cargill is a Delaware corporation with its principal place of business in Minnesota.

6.    Defendant Matthew Leak is an individual who was employed by Cargill and, as part of his employment, entered into the Non-Solicit Agreement and the Confidentiality Agreement that contains restrictive covenants for the explicit and agreed benefit of Cargill. At the time of his resignation from Cargill, Mr. Leak was a resident of and was domiciled in Utah and, upon information and belief, Mr. Leak continues to be a resident of and is domiciled in Utah.

7.    Mr. Leak agreed to the non-exclusive jurisdiction and venue of Utah state and federal courts.

8.    In addition to the irreparable harm that Cargill will experience if Mr. Leak is not enjoined from violating the Non-Solicit Agreement and Confidentiality Agreement, Mr. Leak's breaches of those agreements and his breach of his duty of loyalty have already caused Cargill damages in excess of $75,000, including indirect damages from lost business due to Mr. Leak's solicitation of his former Cargill customers for his own personal business.

**FACTUAL ALLEGATIONS**

**A.    Cargill runs a leading Animal Nutrition Business, and its customer relationships are essential to its success.**

9.    Combining 120 years of experience with insights from operating in 40 countries, Cargill helps livestock and aquaculture farmers, feed manufacturers, and distributors of all sizes deliver better animal nutrition through unparalleled research capabilities, innovative feed and premix products and services, and digital modeling and formulation solutions.

10.    Cargill offers a wide range of nutritional solutions to dairy farmers. Those solutions are based on Cargill's deep understanding of nutrient values that will help dairy farmers—Cargill's customers—make optimal use of the raw materials and forages that are available in their regions.

11.    Cargill designs customer-tailored feeds, premixes, and concentrates to ensure that the solutions meet each customer's animals' exact nutritional needs.

12.    Central to Cargill's nutritional solutions is the Cargill Nutrition System. This uses data analysis and tools to mine information from the world's largest database of nutrient samples, cutting-edge research from Cargill's innovation teams, and internal know-how in feeding animals and formulating diets. A key element of this system is MAX®, which helps dairy farmers—Cargill's customers—measure, evaluate, and record nutrient variables. This system then allows Cargill to deliver an optimum diet that promotes good health in its customers' cows and maximizes nutritional values and thus impact positively the production of the highest-quality dairy products at the best cost.

**B.    Mr. Leak served as a Cargill Animal Dairy Nutritionist, engaging directly with customers on Cargill's behalf and using Cargill's proprietary and confidential information and tools.**

13.    While employed by Cargill for over a decade, Mr. Leak served as a Cargill Animal Dairy Nutritionist. Cargill Animal Dairy Nutritionists are an important part of Cargill's Animal Nutrition Business.

14.    As a Cargill Animal Dairy Nutritionist, Mr. Leak developed and sold customized feed and nutrition products to several Cargill customers, using Cargill's proprietary software to do so. Mr. Leak was involved in setting prices for these customized feed and nutrition products, and thus he had access to information regarding Cargill's expenses and profits related to those products.

15.    Mr. Leak's role as a Cargill Animal Dairy Nutritionist went beyond simply selling feed to Cargill customers. Instead, Mr. Leak worked on Cargill's behalf as a partner to Cargill's customers to help keep their dairy farms running smoothly and to ensure Cargill's customers' success. Mr. Leak regularly advised customers about their animals' nutrition needs, including engaging with them on challenges they were facing and how Cargill could help them address those challenges through adjustments in its custom nutrition formulas for each customer.

**C.    Mr. Leak agreed to the obligations in the Non-Solicit Agreement and the Confidentiality Agreement.**

16.    Because Cargill Animal Dairy Nutritionists are regularly exposed to and work with Cargill confidential and proprietary information, Cargill requires them to sign a confidentiality agreement as a condition of their employment.

17.    To that end, on May 1, 2001, when Mr. Leak began his Cargill employment, he signed the Confidentiality Agreement as a condition of his employment. Mr. Leak received valuable consideration in exchange for signing the Confidentiality Agreement, including his employment with Cargill, salary, and benefits.

18.    In the Confidentiality Agreement, he agreed to protect Cargill's confidential information, and "to return to Cargill, at the time of [his] termination of [his] employment with Cargill, all confidential information and materials of whatever nature arising from [his] employment with Cargill."

19.    Similarly, in recognition of the deep customer relationships that Mr. Leak, as a Cargill Animal Dairy Nutritionists, would form on Cargill's behalf and the Cargill confidential and proprietary information to which he would be exposed, Cargill required Mr. Leak to agree to a non-solicit and non-compete agreement. To that end, on February 16, 2010, Mr. Leak and Cargill entered the Non-Solicit Agreement. The Non-Solicit Agreement is specifically tailored to Cargill's Animal Nutrition Business Unit and to the Dairy Nutritionist role.

20.    Mr. Leak received valuable consideration in exchange for entering the Non-Solicit Agreement, including Cargill employment and his eligibility for the Cargill Animal Nutrition Dairy Nutritionist Compensation Program.

21.    In the Non-Solicit Agreement, Mr. Leak agreed that during his Cargill employment and for six months following termination of his Cargill employment, he would not, among other things, "as a partner, officer, employee, director, stockholder, proprietor,

other equity owner, contractor, consultant, representative, agent, or otherwise, directly or indirectly:

a.   Solicit, sell products or provide services that compete with the business of [Cargill Animal Nutrition] to any customer of [Cargill Animal Nutrition] that [Mr. Leak] developed, called upon or worked with in any capacity while employed by [Cargill] and whose business [Mr. Leak] gained after the effective date of this Agreement (hereinafter referred to as "New Customer");

b.   Influence or attempt to influence a supplier, New Customer, vendor, contractor, representative, distributor or consultant to terminate or modify any written or oral agreement or course of dealing with [Cargill Animal Nutrition]."

22.   Mr. Leak acknowledged that in the course of his employment, Cargill would provide him with proprietary and confidential information, and that the disclosure of such information "would seriously harm Cargill's business." He also acknowledged that "the goodwill of Cargill with its customers has been, or will be, established at substantial cost and effort and irreparable damage will result to Cargill if goodwill is diverted from Cargill."

**D.    Mr. Leak announced his intended resignation, and then immediately violated the Non-Solicit Agreement.**

23.   On December 5, 2022, Mr. Leak notified his indirect supervisor that he was exploring separating from Cargill to start his own business and considering resigning. He told her that he wanted to retain his Cargill customers and he asked that Cargill release him from his obligations under the Non-Solicit Agreement. His indirect supervisor did not agree.

24.   Then, while Mr. Leak was still a Cargill employee, during the remainder of December and into January 2023, Mr. Leak began running his own ration balancing software and setting up his own personal nutrition consulting business. Also while he was

still a Cargill employee, Mr. Leak solicited Cargill customers who he had developed, called upon or worked with during his Cargill employment and whose business Mr. Leak gained after signing the Non-Solicit Agreement. He further convinced some of those very same Cargill customers to stop working with Cargill and to instead work with him at his new personal business.

25.     In January 2023, Mr. Leak resigned from his Cargill employment. Again, his indirect supervisor told him that Cargill would not release him from the Non-Solicit Agreement. Mr. Leak then threatened that Cargill would "look bad" trying to enforce the Non-Solicit Agreement and that Cargill had more to lose than he did.

26.     After his resignation, Mr. Leak continued to solicit Cargill customers who he had developed, called upon or worked with during his Cargill employment and whose business Mr. Leak gained after signing the Non-Solicit Agreement, and continued to convert those customers to his own personal business.

27.     Due to Mr. Leak's conduct, Cargill has sustained monetary damages, and has suffered irreparable harm in the form of lost customer goodwill.

28.     Mr. Leak also retained Cargill confidential and proprietary information on his computer, personal electronic devices, and in his personal email. To date, he has not returned that confidential or proprietary information to Cargill, despite Cargill's numerous requests that he do so. Cargill has sustained damages in relation to Mr. Leak's retention and, on information and belief, use of Cargill's confidential and proprietary information in breach of the Confidentiality Agreement and his duty of loyalty to Cargill, and irreparable harm in its use or disclosure.

## CAUSES OF ACTION

### Count One
### Breach of Contract

29.     Cargill repeats and realleges Paragraphs 1 through 27 as though fully set forth herein.

30.     The Non-Solicit Agreement and Confidentiality Agreement are valid and enforceable contracts, and Cargill has fully performed its obligations under them.

31.     Mr. Leak has breached the Non-Solicit Agreement and Confidentiality Agreement.

32.     Mr. Leak's breaches caused damages to Cargill.

33.     Mr. Leak's breaches caused irreparable harm to Cargill, necessitating an injunction for the restricted period (for the Non-Solicit Agreement) and permanently (for the Confidentiality Agreement), with tolling of both agreements for the time period in which Mr. Leak was in breach.

### Count Two
### Breach of Fiduciary Duty of Loyalty

34.     Cargill repeats and realleges Paragraphs 1 through 32 as though fully set forth herein.

35.     Mr. Leak owed a duty of loyalty to Cargill as a key employee in the Animal Nutrition business with access to confidential and proprietary information and as an advisor to customers on Cargill's behalf.

36.     Mr. Leak breached his duty of loyalty to Cargill by running his own ration balancing software and setting up his own personal nutrition consulting business while still employed by Cargill.

9

37.     Mr. Leak breached his duty of loyalty to Cargill by soliciting current Cargill customers for his personal business while still employed by Cargill.

38.     As a result of Mr. Leak's breaches of his duty of loyalty, some of Cargill's customers stopped working with Cargill and instead began working with Mr. Leak at his new business.

39.     Mr. Leak's breaches caused damages to Cargill.

40.     Mr. Leak's breaches caused irreparable harm to Cargill, necessitating an injunction against Mr. Leak.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cargill, Incorporated respectfully requests that the Court enter judgment in its favor and against Defendant Matthew Leak and provide Cargill with the following relief:

A.     Damages for Mr. Leak's breaches of contract in an amount to be determined at trial;

B.     Damages for Mr. Leak's breaches of the fiduciary duty of loyalty in an amount to be determined at trial;

C.     Issuance of injunctive relief prohibiting Mr. Leak from violation of the Non-Solicit Agreement for the restrictive-covenant period, tolling the period of time in which Mr. Leak was breaching the agreement;

D.     Issuance of injunctive relief prohibiting Mr. Leak from violation of the Confidentiality Agreement;

E.    Issuance of injunctive relief prohibiting Mr. Leak from violation of his fiduciary duty of loyalty to Cargill;

F.    An award to Plaintiff of its costs and expenses;

G.    An award of pre- and post-judgment interest on Cargill's damages; and

H.    Any such other and further relief as the Court deems just and equitable.

Dated:  March 8, 2023                        **PARR BROWN GEE & LOVELESS, P.C.**

                                             /s/ Jonathan O. Hafen
                                             Jonathan O. Hafen
                                             Daniel S. Sorensen

                                             **GREENE ESPEL PLLP**
                                             Jenny Gassman-Pines, Reg. No. 0386511 (*pro hac vice to be filed*)
                                             222 S. Ninth Street, Suite 2200
                                             Minneapolis, MN  55402
                                             jgassman-pines@greeneespel.com
                                             (612) 373-0830

                                             *Attorneys for Cargill, Incorporated*

4887-4644-5653