UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| CARGILL INCORPORATED,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW LEAK,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S SHORT FORM DISCOVERY MOTION FOR PROTECTIVE ORDER (DOC. NO. 28)**<br><br>Case No. 1:23-cv-00029<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

    Plaintiff Cargill, Incorporated brought this action suing its former employee, Defendant Matthew Leak, alleging violations of the non-solicitation and noncompete agreements in Mr. Leak's employment contract with Cargill.[1] Mr. Leak was a Dairy Nutritionist for Cargill who sold customized feed and nutrition products to dairy farmers across northern Utah.[2] Cargill alleges Mr. Leak announced his intention to start his own dairy nutrition business and began soliciting Cargill customers while he was still an employee, and continued soliciting Cargill customers after his resignation.[3] Mr. Leak counterclaimed for defamation, false light, and intentional interference with economic relations.[4] Mr. Leak alleges Cargill directed two

---

[1] (Compl., Doc. No. 1.)

[2] (*Id.* ¶ 1.)

[3] (*Id.* ¶ 3.)

[4] (Answer and Countercl., Doc. No. 20.)

employees, including Tyson Grisenti, to make false and defamatory statements about Mr. Leak and to solicit customers Mr. Leak previously serviced.[5]

This dispute arises from the parties' disagreement about where the depositions of two Cargill employees—Mr. Grisenti and Marc Sholder—should take place.[6] Cargill argues the depositions should be held where Mr. Grisenti and Mr. Sholder reside or transact business (Idaho and Colorado, respectively) because neither individual is a managing agent of Cargill.[7] Mr. Leak contends Cargill must make Mr. Grisenti and Mr. Sholder available where Cargill brought suit (Salt Lake City, Utah) because they are managing agents.[8] Cargill filed a motion seeking a protective order prohibiting Mr. Leak from conducting the depositions in Salt Lake City.[9] The court held a hearing on the motion on November 7, 2023.[10] Because Mr. Leak has not established either Mr. Grisenti or Mr. Sholder are managing agents of Cargill, Cargill's motion is granted and the depositions must take place within the geographical limits outlined in Rule 45 of the Federal Rules of Civil Procedure.

## LEGAL STANDARDS

Rule 26(c) of the Federal Rules of Civil Procedure provides the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

---

[5] (*Id.* at 11.)

[6] (*See* Short Form Mot. for Protective Order ("Mot."), Doc. No. 28; Matthew Leak's Resp. to Cargill's Short Form Mot. for Protective Order ("Opp'n"), Doc. No. 29.)

[7] (Mot. 3, Doc. No. 28.) Cargill has also offered to make these employees available for depositions virtually or in Minnesota, where Cargill's headquarters are located. (*Id.* at 2.)

[8] (Opp'n 2–3, Doc. No. 29.)

[9] (Mot., Doc. No. 28.)

[10] (*See* Min. Entry, Doc. No. 31.)

undue burden or expense," including "specifying terms, including time and place . . . for the disclosure or discovery."[11] As relevant to the parties' dispute, Rule 30(b)(1) "authorizes a party to compel the deposition of an adversary corporation or other business entity through one of its officers, directors, or managing agents which the party names in its deposition notice."[12] A plaintiff entity must produce its managing agents for deposition in the forum where the plaintiff chose to bring the lawsuit.[13] But "[i]f the individual designated in a notice of deposition is not an officer, director, or managing agent, the deposition must proceed as for an ordinary nonparty witness."[14] A nonparty witness must be subpoenaed under Rule 45, and the deposition must take place "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[15]

Courts look at the following factors to determine whether a witness is a managing agent: (1) whether the individual possesses "general powers to exercise judgment and discretion in corporate matters"; (2) whether the individual is "a person who can be relied on to give testimony, at the employer's request, in response to the demand of the examining party"; (3) whether the individual's interests can be expected to identify with the corporation's interests; (4) whether the corporation employs anyone in a position of higher authority than the individual in

---

[11] Fed. R. Civ. P. 26(c)(1).

[12] *Centurion Silver, LLC v. Silverberg Dev. Corp.*, No. 07-1091 RB/ACT, 2008 WL 11415878, at *2 (D.N.M. June 26, 2008) (unpublished).

[13] *Perdana Cap. Inc. v. Chowdry*, No. C 09-1479 RS (JL), 2010 U.S. Dist. LEXIS 153563, at *8 (N.D. Cal. Sep. 2, 2010) (unpublished).

[14] 7 Moore's Federal Practice § 30.03 (3d ed. 2023).

[15] Fed. R. Civ. P. 45(c)(1)(A).

3

the area where information is sought; and (5) the general responsibilities of the individual regarding the matters involved in the litigation.[16] "When the issue is whether an individual is a managing agent for discovery purposes, the burden is on the person or entity seeking the discovery."[17] But this is a "modest burden since the movant need only demonstrate that there is at least a close question as to whether the witness is a managing agent."[18] "[F]or purposes of this analysis all doubts should be resolved in favor of the discovering party."[19]

## ANALYSIS

Where Cargill must make Mr. Grisenti and Mr. Sholder available for deposition depends on whether Mr. Grisenti and Mr. Sholder are managing agents of Cargill. If, as Cargill contends, Mr. Grisenti and Mr. Sholder are not managing agents, their depositions must take place consistent with Rule 45. Because Mr. Leak has not shown either Mr. Grisenti or Mr. Sholder qualify as managing agents, the court grants Cargill's motion for a protective order. The depositions must take place within the geographical limits outlined in Rule 45.

The applicable factors are addressed as to each employee below.

---

[16] *Centurion Silver*, 2008 WL 11415878, at *2–3; *see also* 7 Moore's Federal Practice § 30.03 (3d ed. 2023) (listing the same factors); *cf. Stearns v. Paccar*, 986 F.2d 1429, 1993 U.S. App. LEXIS 1232, at *11–12 (10th Cir. Jan. 22, 1993) (unpublished) (listing similar factors for determining whether a witness is a "managing agent" under Rule 32(a), the rule governing how deposition testimony may be used at trial).

[17] *Centurion Silver*, 2008 WL 11415878, at *3.

[18] *Id.* (internal quotation marks omitted).

[19] *Id.* (internal quotation marks omitted); *see also* 7 Moore's Federal Practice § 30.03 (3d ed. 2023).

I.      **Mr. Grisenti is not a managing agent.**

Mr. Grisenti is a Dairy Focus Consultant at Cargill who serves with eight other Dairy Focus Consultants in his region.[20] Cargill alleges Mr. Grisenti's Dairy Focus Consultant position makes him Mr. Leak's former peer, because Mr. Leak was a Dairy Nutritionist.[21] Mr. Leak alleges Mr. Grisenti acted at Cargill's direction in defaming Mr. Leak and soliciting his former customers.[22] Mr. Grisenti lives and works in Burley, Idaho.[23]

*Mr. Grisenti's ability to exercise judgment and discretion in corporate matters.* Mr. Leak argues Mr. Grisenti "exercised his own judgment and discretion in how to develop and retain the business of Cargill customers, including sales pitches and whether to (as alleged by [Mr.] Leak) defame [Mr.] Leak to develop business for Cargill."[24] Cargill asserts Mr. Grisenti was Mr. Leak's peer.[25] Both parties' assertions suggest Mr. Grisenti was merely a fellow salesperson (at the same level as Mr. Leak) who was involved in the underlying events—making allegedly defamatory statements to Mr. Leak's customers. But nothing suggests Mr. Grisenti had "general powers" of judgment and discretion in corporate matters, either broadly within the organization or with respect to Mr. Leak.[26] To the extent Mr. Leak alleges Mr. Grisenti's acted at Cargill's

---

[20] (Mot. 3, Doc. No. 28.)

[21] (*Id.*)

[22] (*See* Answer and Countercl. 11, Doc. No. 20.)

[23] (Mot. 2, Doc. No. 28.)

[24] (Opp'n 3, Doc. No. 29.)

[25] (Mot. 3, Doc. No. 28.)

[26] *See Centurion Silver*, 2008 WL 11415878, at *2.

direction,[27] this undermines his argument as to this factor; if Mr. Grisenti had plenary discretion, he would not need direction from Cargill. Overall, this factor suggests Mr. Grisenti is not a managing agent.

*Likelihood of Mr. Grisenti testifying at Cargill's request, upon demand of Mr. Leak.* Because neither party provided evidence regarding this factor, other than noting Mr. Grisenti is a Cargill employee, this factor does not lean in either direction.

*Extent to which Mr. Grisenti's interests identify with Cargill's.* Where Mr. Grisenti is accused of defaming Mr. Leak, it is not clear his interests are aligned with Cargill's. Instead, it may be in Mr. Grisenti's interest to claim he made the statements at Cargill's direction, while Cargill may claim it was unaware of or did not condone Mr. Grisenti's statements and actions. Moreover, Mr. Grisenti is not a high-level employee within Cargill—he serves with eight other Dairy Focus Consultants in his region. This factor suggests Mr. Grisenti is not a managing agent.

*Higher-authority Cargill employees in the area where information is sought.* While it is unclear exactly what information Mr. Leak seeks in the deposition, Mr. Grisenti is not a high-level employee—he serves with eight other Dairy Focus Consultants in his region. Mr. Leak's allegation that Mr. Grisenti acted at Cargill's direction[28] suggests there are persons with higher authority involved. This factor suggests Mr. Grisenti is not a managing agent.

---

[27] (*See* Answer and Countercl. 11, Doc. No. 20.)

[28] (*See id.*)

*Mr. Grisenti's responsibilities regarding the litigated matters.* Mr. Leak alleges Mr. Grisenti made defamatory statements and solicited Mr. Leak's customers on behalf of Cargill.[29] Thus, Mr. Grisenti was involved in the underlying events. Mr. Leak relies on *Brunson v. PHH Mortgage Corporation*[30] in support of the proposition that even lower-level employees can be managing agents if they are heavily involved in the litigated matters.[31] In *Brunson*, the court found a low level employee to be a managing agent where only the employee had direct involvement in and knowledge of the underlying events—and the company's Rule 30(b)(6) designee lacked knowledge of them.[32] But the reach of *Brunson* is limited. Unlike the employee in *Brunson*, Mr. Grisenti did not have the sole and central responsibility in the litigated matters; other employees were involved.[33] And unlike in *Brunson*, no corporate representative has testified and denied knowledge of the underlying events.[34] If Mr. Leak could establish Mr. Grisenti was a managing agent solely by asserting he was involved in the underlying events, any fact witness would be a managing agent. *Brunson* does not justify treating Mr. Grisenti as a managing agent.

Considering all the factors, Mr. Leak has failed to show Mr. Grisenti qualifies as a managing agent of Cargill. Accordingly, Mr. Grisenti's deposition must take place within the geographical limits outlined in Rule 45.

---

[29] (*See id.*)

[30] 342 F.R.D. 315 (M.D. Fla. 2022).

[31] (Opp'n 2, Doc. No. 29.)

[32] *Brunson*, 342 F.R.D. at 322.

[33] *See id.* at 323–24; (*see also* Opp'n 2–3, Doc. No. 28).

[34] *See Brunson*, 342 F.R.D. at 322.

## II. Mr. Sholder is not a managing agent.

Mr. Sholder is a Western U.S. Sales Leader at Cargill who supervises approximately twelve employees (including Mr. Leak, before his termination) and reports to Julie Abrahamzon, Cargill's Rule 30(b)(6) designee.[35] Mr. Leak asserts Mr. Sholder decided, with Ms. Abrahamzon, whether to enforce Cargill's restrictive covenants against Mr. Leak.[36] Mr. Sholder lives and works in Windsor, Colorado.[37]

*Mr. Sholder's ability to exercise judgment and discretion in corporate matters.* Mr. Leak alleges Mr. Sholder decided, with Ms. Abrahamzon, whether to enforce Cargill's restrictive covenants against Mr. Leak, which suggests Mr. Sholder has some discretion in relevant corporate matters.[38] But Mr. Sholder exercised this discretion in conjunction with Ms. Abrahamzon, his supervisor.[39] There is no justification for considering Mr. Sholder to be a managing agent when Mr. Leak alleges Ms. Abrahamzon has knowledge of the litigated matters.[40] Nothing in the *Brunson* case, as discussed above, changes this analysis. Where Ms. Abrahamzon has been designated as Cargill's Rule 30(b)(6) designee and Mr. Leak will have an

---

[35] (Mot. 3, Doc. No. 28.)

[36] (Opp'n 2–3, Doc. No. 29.)

[37] (Mot. 2, Doc. No. 28.)

[38] (Opp'n 2–3, Doc. No. 29.)

[39] *See Young & Assocs. Pub. Rels. v. Delta Air Lines*, 216 F.R.D. 521, 523 (D. Utah 2003) ("[T]he following consideration is of particular importance: whether the employee's authority included exercising his or her *personal* discretion in making decisions *without obtaining additional authorization from superiors* in dealing with corporate matters." (emphasis added)).

[40] (*See* Opp'n 2–3, Doc. No. 28 ("[Mr.] Sholder decided with [Ms.] Abrahamzon whether to enforce or waive Cargill's restrictive covenants against [Mr.] Leak—a key dispute in this case.")); *see also Brunson*, 342 F.R.D. at 322–24.

opportunity to question her about the same topics, this factor weighs against finding Mr. Sholder to be a managing agent.

*Likelihood of Mr. Sholder testifying at Cargill's request, upon demand of Mr. Leak, and extent to which Mr. Sholder's interests identify with Cargill's.* Because neither party provided evidence regarding either of these factors, other than noting Mr. Sholder is a Cargill employee, these factors do not lean in either direction.

*Higher-authority Cargill employees in the area where information is sought.* Mr. Leak does not dispute that Ms. Abrahamzon occupies a position of higher authority at Cargill than Mr. Sholder. And although it is unclear exactly what information Mr. Leak seeks, Cargill has designated Ms. Abrahamzon to testify as its Rule 30(b)(6) witness on the same or similar topics (the noncompete and non-solicitation agreements).[41] Lastly, Mr. Leak does not explain what actions Mr. Sholder took (if any) independently of Ms. Abrahamzon—or what information he has that differs from what Ms. Abrahamzon can provide. This factor suggests Mr. Sholder is not a managing agent.

*Mr. Sholder's responsibilities regarding the litigated matters.* The only claim Mr. Leak makes about Mr. Sholder's responsibilities is a vague allegation that Mr. Sholder decided, with Ms. Abrahamzon, whether to enforce Cargill's restrictive covenants against Mr. Leak.[42] Without more, this is insufficient to show Mr. Sholder was a managing agent.

---

[41] (*See* Mot. 3–4, Doc. No. 28.)

[42] (*See* Opp'n 2–3, Doc. No. 29.)

Considering all the factors, Mr. Leak has failed to show Mr. Sholder qualifies as a managing agent of Cargill. Accordingly, Mr. Sholder's deposition must take place within the geographical limits outlined in Rule 45.

## CONCLUSION

Because Mr. Leak failed to show either Mr. Grisenti or Mr. Sholder are managing agents of Cargill, Cargill's motion for a protective order[43] is GRANTED. Mr. Grisenti's and Mr. Sholder's depositions must take place within the geographical limits outlined in Rule 45 of the Federal Rules of Civil Procedure.

DATED this 21st day of November, 2023.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[43] (Doc. No. 28.)